the parties without the assent and against the will of the other."

In White *v.* Hewitt (1 *E. D. Smith*, 395), this question distinctly arose, and the court say it is not law that a party contracting to perform a specific job, may prosecute it so far as he thinks proper, and then abandon it unfinished, without the fault or assent of the party with whom he contracts, and then sue and recover for so much labor as he has chosen to devote to the undertaking. (See also Neville *v.* Frost, 2 *E. D. Smith*, 62.)

The omission to state the compensation in the contract does not alter the rule. The defendant would be bound to pay what the work and materials were worth, but he had a right to insist that the contract should be first completed. If the contractor wanted any other terms of payment, he should have stipulated for it in his contract.

The judgment must be reversed.

---

## BARKER *a.* JOHNSON.

*Supreme Court, First District; Special Term, January,* 1857.

SUPPLEMENTARY PROCEEDINGS.—APPOINTMENT OF RECEIVER.

Under the Code a receiver of the property of a judgment debtor cannot be appointed, except in proceedings upon the return of an order, personally served on the judgment debtor, requiring him to appear and answer.

A receiver appointed without proceedings giving such notice has no authority.

*Quere ?* whether the debtor in a judgment obtained on a summons served only by publication, and not personally, is a judgment debtor within the meaning of the provisions respecting supplementary proceedings ?

MITCHELL, J.—Stanton obtained judgment in this court in August, 1855, against Clark on a prior judgment obtained in Connecticut: the judgment in this court was by publication, without personal service of the summons. Execution was issued and returned unsatisfied. On November 15, 1855, Stanton took out an order on proceedings supplementary to execution, for Clark to appear and answer, but as it could not be personally

served, the judge refused to proceed on it, and that proceeding was discontinued by an order entered to that effect on the original order, on December 8, 1855. On the same day Stanton presented an affidavit, stating that *there were no supplemental proceedings now pending against Clark*, and gave notice of the discontinuance to the attorney of these defendants. On the same day a new affidavit was presented by Stanton's attorney alleging the judgment and execution returned unsatisfied, and that Clark resided in Connecticut, and that these defendants had and claimed property of his. On this affidavit an order was obtained on the same day appointing this plaintiff receiver of the property, &c., of Clark, on his giving a bond to be approved of. The bond was approved and filed on December 20, 1855, and on the last day leave to commence this action was obtained by the receiver. No order for Clark to appear and answer was taken out in this last proceeding, and none was ever served on him. This action was commenced December 26, 1855.

In the original action in this court, the plaintiff took out an attachment against Clark's property, and under it the sheriff of Kings county levied on forty-seven pieces of timber belonging to Clark, on June 9, 1855, on board a vessel belonging to these defendants. The sheriff detained not only the timber but the vessel also from that day to the 15th of the same month, although he might have discharged the timber, as it was on deck, in a single day. This detention of the vessel was without any authority from Stanton or his attorney, or Clark: it was an erroneous act of the sheriff alone. On the 15th of June the captain moored his vessel, and as Stanton did not give a sufficient indemnity to the sheriff, the sheriff abandoned the attachment. The timber was on the same day removed from the ship and put into a yard on storage, where it still remains. It had been consigned to Roosevelt & Joice; but they refused to receive it as consignees, saying it did not suit them. These defendants had a lien on the timber for the agreed freight of it, amounting to $150. After it was stored they had also a right to be paid the storage for it, for which they were liable, as it was received on storage "for their percentage and risk." The storage was $7 a month.

Stanton's attorney called on the defendants in the course of the week, before the 19th of November, and also on the 26th of

December, and not before this action was commenced, and demanded of them the timber: he made no formal tender of any money, but said he was ready to pay the freight, $150; and on the 26th of December said he would also pay the storage. These defendants refused to deliver it unless they were also paid $160 for the detention of the vessel, which " it is proved was worth to them $40 a day."

The action is not for the recovery of the property itself, but for a determination of the rights of the plaintiff; that the defendants be adjudged to deliver the property to the plaintiff; that it be sold under the direction of the court; and that out of the proceeds the lawful liens of the *defendants*, if any, be paid, and for costs; or for other and further relief.

The defendants insist—I. That the original judgment in this court, being founded only on publication and not on personal service, Clark was not a judgment debtor under it, within the meaning of section 292 of the Code.

II. That no receiver can be appointed unless the creditor proceeds under this section and takes out an order to appear and answer, and serve it personally on the judgment debtor. In this case the order to appear and answer as once issued, was never served, and was discontinued before the receiver was appointed. The proceeding under which the receiver was appointed commenced December 8, 1855, and no attempt was made to give the judgment debtor any notice of it.

In *Kemp v.* Harding (4 *How. Pr. R.*, 178), a receiver was appointed, as in this case, on a summons to the alleged debtor of the judgment debtor alone, and without any notice to the judgment debtor. On appeal, it was held at the general term in the eighth district, before four justices, that the appointment was not authorized by the Code; that the appointment can only be made on a proceeding under section 294 of the Code against the judgment debtor himself, and on notice to him; and that if he cannot be served with notice, the creditor must proceed by a new action in nature of a judgment creditor's bill. This decision was approved in Dorr *v.* Noxon (5 *Ib.*, 29). It was made more than seven years since, and no decision to the contrary is quoted. It comports also with the principle that in all cases a party is to have notice of proceedings instituted against him; and with the rule that when a special statutory proceeding is

created, the one who avails himself of it can do so only by con-
forming to its provisions.   Section 294 points out the first step
towards the relief to be granted : it is to obtain the order to ap-
pear and answer.   It is to be implied (although not so expressed)
that the subsequent proceedings allowed in the same chapter
have no foundation to rest upon, unless this preliminary one is
first laid.   If the order to appear and answer is an essential to
the subsequent .proceedings, its service must be equally an es-
sential.   The Legislature would not make the order to *appear*
necessary, and yet allow the creditor to proceed without any ser-
vice, of it.   As the Code does not provide for any substituted
service of the order, it must be according to the common law—
that is, be personal.

The appointment of the receiver was therefore without author-
ity, and the plaintiff has no right to sue.   The complaint must
therefore be dismissed ; but as he had leave to sue, and the de-
fendant may not have been entirely free from fault, it is without
costs ; so that each party pays his own costs.   The first question
it is unnecessary to pass upon.

## ATWILL *a.* LE ROY.

*Supreme Court, First District ; Special Term, March,* 1857.

CAUSE OF ACTION.—CONTRACT.—TORT.—ASSIGNMENT.

A. and B. entered into a contract with C., to render services, and to be paid in
stock, which C. falsely represented as valuable ; B. assigned his interest in the
contract to A., who thereupon rendered the services, and on being tendered the
stock in payment refused to receive it, and brought an action for the value of
the services as upon contract,—

*Held,* 1. That his complaint setting forth these facts was not demurrable, as
joining a cause of action upon contract with one for tort, nor as being an action
for tort by an assignee of the cause of action.   2. That the action was for fraud,
and the summons should have been for relief, and the complaint should have
prayed damages.   3. That as A. alone rendered the services, he alone was in-
jured by the false representations, and the cause of action was in him alone.

Demurrer to complaint.